# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **U. S. COMMODITY FUTURES TRADING COMMISSION,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **EDWIN A. VASQUEZ and VASQUEZ GLOBAL INVESTMENTS, LLC** <br><br> **Defendants.** | **Case No: 14-cv-196** |

## COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND PENALTIES UNDER THE COMMODITY EXCHANGE ACT

The United States Commodity Futures Trading Commission (the "Commission" or the "CFTC"), by and through its attorneys, alleges as follows:

### I.        INTRODUCTION

1.        Between August 9, 2011 and the present (the "Relevant Time"), Defendants Edwin A. Vasquez ("Vasquez") and his company Vasquez Global Investments, LLC ("VGI") (collectively "Defendants"), fraudulently solicited and accepted at least $583,491 from at least 19 individuals for the purpose of trading commodity futures contracts ("futures") through participation in a commodity pool (the "Vasquez pool").

2.        Vasquez began soliciting Vasquez pool participants and prospective participants in his own name in or around August 2011.  In November 2011, Vasquez established VGI and, beginning in or around August 2012, Vasquez solicited and accepted pool participants' funds in the name of VGI for the Vasquez pool.  In May 2013, Vasquez hired at least four employees for

VGI who solicited prospective participants for the Vasquez pool. Additionally, Defendants commingled pool participants' funds intended for commodity futures trading with Vasquez's personal funds and with VGI's funds. Of the $583,491 Defendants solicited and accepted from pool participants for the purpose of trading commodity futures, Defendants lost $65,374 trading commodity futures, returned $186,561 to pool participants as purported profits in the manner of a Ponzi scheme, and misappropriated the remaining $331,556.

3. Further, Vasquez willfully or recklessly made misrepresentations of material fact to pool participants, including, but not limited to, misrepresentations that: (1) pool participants would earn a guaranteed monthly return (typically 10%) on their investment, (2) the Vasquez pool was a "no risk" investment, and (3) all funds invested in the Vasquez pool would be used to trade commodity futures. Vasquez also issued false written statements to at least two pool participants misrepresenting the profitability and value of their respective shares of the Vasquez pool.

4. By this conduct, Vasquez and VGI have engaged, are engaging, or are about to engage in acts and practices that violate anti-fraud and other provisions of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1 *et seq.*, (2012) and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2013).

5. Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint, or in similar acts and practices.

6. Accordingly, the CFTC brings this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), to enjoin Defendants' unlawful acts and practices and to compel their compliance with the Act and the Regulations. In addition, the Commission seeks restitution,

disgorgement, civil monetary penalties, and such other equitable relief as this Court may deem necessary and appropriate.

## II.    JURISDICTION AND VENUE

7.    This Court has jurisdiction over the subject matter of this action and the Defendants pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012), which authorizes the Commission to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

8.    Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), in that Defendants are found in, inhabit and/or transact or have transacted business in this District, and Defendants' acts and practices in violation of this Act have occurred, are occurring, and/or are about to occur within this District, among other places.

## III.    PARTIES

9.    The U.S. Commodity Futures Trading Commission is an independent federal regulatory agency charged by Congress with the responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.*

10.    Defendant Edwin A. Vasquez resides in Arden, North Carolina.  Vasquez was primarily responsible for the solicitation of Vasquez pool participants and the management and control of the pool's funds and trading account.  Vasquez has never been registered with the Commission in any capacity.

11.    Defendant Vasquez Global Investments, LLC is a North Carolina limited liability company that Vasquez formed on or around November 22, 2011.  VGI has maintained offices in

3

Arden, North Carolina and Fletcher, North Carolina but, upon information and belief, is now operating out of Vasquez's personal residence. Vasquez is and was at all times the sole owner and investment manager of VGI. VGI has never been registered with the Commission in any capacity.

## IV. STATUTORY BACKGROUND

12. A "commodity pool" is defined in Section 1a(10)(A) of the Act, 7 U.S.C. § 1a(10)(A) (2012), as "any investment trust, syndicate or similar form of enterprise operated for the purpose of trading in commodity interests."

13. A "commodity pool operator" or "CPO" is defined in Section 1a(11)(A) of the Act, 7 U.S.C. § 1a(11)(A) (2012), as any person "engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts or receives from others, funds, securities, or property . . . for the purpose of trading in commodity interests," including any "commodity for future delivery."

14. A "commodity trading advisor" or "CTA" is defined in Section 1a(12) of the Act, 7 U.S.C. § 1a(12) (2012), as any person who, "for compensation or profit, engages in the business of advising others . . . as to the value or the advisability of" trading in any commodity futures and options contract.

15. A "futures commission merchant" or "FCM" is defined in Section 1a(28) of the Act, 7 U.S.C. § 1a(28) (2012), as any individual, association, partnership, corporation or trust that is engaged in soliciting or accepting orders for the purchase or sale of any commodity for future delivery and, in or in connection with such solicitation or acceptance of orders, "accepts any money, securities or property (or extends credit in lieu thereof) to margin, guarantee, or secure any trades or contracts that result or may result therefrom."

4

16.     An "Associated Person" or "AP" is defined in Section 4k of the Act, 7 U.S.C. § 6k (2012) and Commission Regulation 1.3(aa)(1) and (2), 17 C.F.R. § 1.3(aa)(1) and (2), with certain qualifications, as a natural person associated with any CTA, CPO or FCM as a partner, officer, employee, consultant, or agent (or any person occupying a similar status or performing similar functions), in any capacity that involves: (i) the solicitation or acceptance of customers' or options customers' orders; or (ii) the supervision of any person or persons so engaged.

17.     A "participant" is defined in Regulation 4.10(c), 17 C.F.R. § 4.10(c) (2013), as "any person that has any direct financial interest in a [commodity] pool (*e.g.,* a limited partner)."

## V.     DEFENDANTS' FRAUDULENT ACTIVITIES

### A.     Solicitation of Pool Participants

18.     From at least August 9, 2011 to the present, Defendants have solicited individuals located in Florida and North Carolina, including in this District, among other places, through emails and face-to-face meetings to participate in the Vasquez pool.  During those solicitations, Vasquez willfully or recklessly misrepresented to pool participants and prospective participants that all of their funds would be used to trade commodity futures, including oil, gold and S&P futures.  Vasquez also willfully or recklessly misrepresented the profitability of the Vasquez pool, including that the Vasquez pool was a no-risk investment with guaranteed returns, typically of 10% per month, and that the pool had approximately $3 million in contributions.

19.     Vasquez typically provided pool participants and perspective participants with a document titled "Vasquez Investment Prospectus" for a private investment pool (the "Prospectus").  In the Prospectus, Vasquez willfully or recklessly misrepresented that the Vasquez pool was a "no-risk investment opportunity" that created "tangible cash flow" by "outperforming any product available" while "protecting and preserving capital."

5

20.     Vasquez also provided certain pool participants and perspective participants with a "How It All Works" analysis in which Vasquez willfully or recklessly misrepresented that pool participants' "[f]unds will be redirected into numerous investment vehicles currently operated in the United States and offshore" and that by "pooling resources" pool participants were able to "diversify [their] investment and eliminate risk."

21.     Vasquez had most, if not all, pool participants execute an Investment Contract Agreement (the "Participant Agreement"). The Participant Agreement states in part that Vasquez will "use investment contribution [*i.e.* pool participant's funds] as he deems necessary in multiple investment vehicles" and that pool participants "shall receive a fixed monthly payment of . . . (10%) per month." The Participant Agreement also states that pool participant's "entire initial investment" will be returned in one year, or earlier if the participant "requests his/her investment contribution in advance of contract due date."

22.     Vasquez opened at least five bank accounts in his own name, or in the name of Vasquez and his wife, and at least one account in the name of VGI with Wells Fargo Bank, N.A., f/k/a as Wachovia Bank ("Wells Fargo"). Specifically, in or around August 2011, Vasquez opened account numbers xxxxxxx4692, xxxxxxx4938, and xxxxxxx7787, and, sometime prior to January 1, 2011, Vasquez opened account number xxxxxxxxx2538 in his own name or in the name of Vasquez and his wife, and in or around December 9, 2011, Vasquez opened account number xxxxxx4147 in the name of VGI (collectively "the Vasquez Bank Accounts").

23.     Vasquez was an authorized signatory for the Vasquez Bank Accounts and maintained control over them during the Relevant Time. At Vasquez's direction, at least six Vasquez pool participants made their funds payable to Vasquez or gave cash directly to Vasquez. Vasquez deposited at least $583,491 of pool participants' funds into the Vasquez Bank

Accounts, where Vasquez commingled them with his, his wife's and VGI's funds, and from which he misappropriated at least $331,566.

**B.     The VGI's Commodity Futures Trading Accounts and Trading Losses**

24.     Vasquez opened, managed, and controlled a commodity futures trading account at Dorman Trading, LLC ("Dorman"), a FCM registered with the Commission.  Specifically, in January 2009, Vasquez opened a futures trading account in his own name, account number xxxxxx3539 (the "3539 Account").  In the account opening documents, dated January 7, 2009, Vasquez falsely represented that he was neither trading nor planned on trading any funds besides his own.  Vasquez also provided a signed letter, dated January 7, 2009, in which he confirmed that he "did not solicit any customer funds" and was using his "own funds to trade the account." Vasquez last actively traded the 3539 Account in July 2012.

25.     Between August 10, 2011, when Vasquez began accepting customer funds, and July 26, 2012, the date Vasquez liquidated the 3539 Account, Vasquez deposited $114,500 of pool participant funds into the 3539 Account.  During that same period, Vasquez lost $65,374 of those funds trading the 3539 Account, including commissions and fees, and withdrew $49,126 from the 3539 Account depositing them into the Vasquez Bank Accounts, where he misappropriated them.  Although he represented to pool participants that he was earning consistent monthly profits trading commodity futures, Vasquez lost money in 11 of the 12 months that he actively traded customer funds in the 3539 Account.

26.     Throughout the life of the account, Vasquez had constant access to information regarding the 3539 Account, including all open positions and account balances.  Vasquez received or had access to actual monthly statements from Dorman that showed, among other things, the profits or losses resulting from trading, and the month-end trade balances for the account.

7

27.     In addition to the 3539 Account, Vasquez opened but never funded three futures trading accounts in the name of VGI.

### C.     The Misappropriation of Pool Participant Funds and Issuance of False Statements

28.     Between August 9, 2011 and November 18, 2013, Defendants misappropriated at least $331,556 in pool participants' funds by depositing them in the Vasquez Bank Accounts that Vasquez controlled, and then using those funds to pay VGI's operating costs and for Vasquez's personal expenses, including at least $14,464 on dining and food, $13,349 on travel, $33,578 on retail purchases, $53,741 on VGI payroll, $15,500 on rent and $52,000 in cash withdrawals.

29.     Despite the actual trading losses and misappropriation of funds described above, Vasquez either willfully or recklessly represented to pool participants and prospective participants that all of the Vasquez pool funds had been invested in commodity futures trading accounts, and that the Vasquez pool was returning profits of 10% per month.  Further, Vasquez either willfully or recklessly issued false written statements to at least two pool participants regarding the profitability and value of their respective shares of the Vasquez pool.  Vasquez made these false statements through emails or other written statements that he and/or VGI issued.

30.     Vasquez also utilized an online trading software platform known as the "NinjaTrader" system, that he gained access to after opening the 3539 Account, to falsely represent the value and performance of the Vasquez pool trading account.  The NinjaTrader system includes a simulated account function known as the "NinjaTrader Simulator Account," which is designed to allow customers to practice trading on the NinjaTrader platform, and therefore does not reflect actual trades or funds.

8

31.     During an in-person meeting with at least one pool participant ("Participant A") on or around August 9, 2011, Vasquez falsely represented that the NinjaTrader Simulator Account was an actual trading account through which Vasquez traded funds belonging to him and to Vasquez pool participants, and that the account had a balance of over $3 million. In fact, the 3539 Account had a balance of $460 on August 9, 2011, and had no open positions as of that date.

32.     In July 2012, Vasquez sent to another pool participant ("Participant B") via e-mail a weekly statement dated July 20, 2012 and purportedly issued by Dorman (the "July Fake FCM Statement"). The July Fake FCM Statement was addressed to "Edwin A Vasquez (PIP)" and reflected a credit into the account of $64,256 as of July 20, 2012 for "P&L" and "cash amounts" of $58,388, as well as "total equity" and "account value at market" of $3,271,203. In fact, the 3539 Account had a balance of $649 on July 20, 2012.

33.     In or around October 2012, Vasquez sent Participant A a weekly statement dated October 3, 2012 purportedly issued by Dorman for the 3539 Account (the "October Fake FCM Statement"). The October Fake FCM Statement was also addressed to "Edwin A Vasquez (PIP)" and reflected "net exposure" of $3,094,725 and "excess equity" of $391,600. Vasquez informed Participant A that the statement showed over $3 million in Vasquez's trading account, which included funds contributed by participants in the Vasquez pool. In fact, as of October 3, 2012, the 3539 Account had been closed with a zero balance.

34.     Vasquez prepared the July Fake FCM Statement and the October Fake FCM Statement knowing that the account balances and profitable trading shown on the statements were false.

35.     In sum, Vasquez either willfully or recklessly has continuously failed to disclose his actual trading losses to pool participants and has continuously made false statements to pool participants regarding the profitability and value of their respective shares of the Vasquez pool.

## VI.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS

### Count I

### Violations of Section 4b(a)(1)(A), (C) of the Act: Fraud by Misappropriation and Misrepresentations

36.     Paragraphs 1 through 35 are realleged and incorporated herein by reference.

37.     Section 4b(a)(1)(A),(C) of the Act, 7 U.S.C. § 6b(a)(1)(A),(C), makes it unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person: (A) to cheat or defraud or attempt to cheat or defraud such other person; or (C) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for such other person.

38.     As set forth above, since at least August 9, 2011, Defendants cheated, defrauded or deceived, and/or attempted to cheat, defraud or deceive Vasquez pool participants by, among other things:

>       (a) willfully or recklessly making false representations of material fact to pool participants and  prospective participants, including that:

>       (i)     pool participants would earn a 10% monthly return on their investment;

>       (ii)    the Vasquez pool was a "no risk" investment;

>       (iii)   all pool participant funds would be used to trade commodity futures;

10

      (iv)     trading in the Vasquez pool was profitable; and

   (b) misappropriating pool participant funds.

39. By this conduct, Defendants violated Section 4b(a)(1)(A), (C) of the Act, 7 U.S.C. § 6b(a)(1)(A), (C).

40. Vasquez's acts, omissions and failures, as described in this Count One, were committed within the scope of his employment or office with VGI. Therefore, VGI is liable for his acts, omissions, and failures pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2013).

41. During the Relevant Time, Vasquez directly or indirectly controlled VGI, and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting VGI's violations described in this Count One. Pursuant to Section 13(b) of the Act, 7 U.S.C. §13c(b) (2012), Vasquez is therefore liable for VGI's violations described in this Count One to the same extent as VGI.

42. Each misappropriation of funds and each misrepresentation of material fact, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(1)(A), (C) of the Act, 7 U.S.C. § 6b(a)(1)(A), (C) (2012).

### Count II

### Violations Section 4b(a)(1)(B) of the Act:
### Fraud by False Statements

43. Paragraphs 1 through 35 are realleged and incorporated herein by reference.

44. Section 4b(a)(1)(B) of the Act, 7 U.S.C. § 6b(a)(1)(B), makes it unlawful for any person, in or in connection with any contract of sale of any commodity for future delivery or other agreement, contract or transaction "willfully to make or cause to be made to the other

11

person any false report or statement or willfully to enter or cause to be entered for the other person any false record."

45.     As set forth above, since at least August 9, 2011, Defendants issued false written statements to Vasquez pool participants touting the profitability and value of participants' shares of the Vasquez pool.  Vasquez also issued false written statements to participants regarding the balance and results of the pool trading accounts, including the July Fake FCM Statement and the October Fake FCM Statement.

46.     By this conduct, Defendants violated Section 4b(a)(1)(B) of the Act, 7 U.S.C. § 6b(a)(1)(B).

47.     Vasquez's acts, omissions and failures, as described in this Count Two, were committed within the scope of his employment or office with VGI.  Therefore, VGI is liable for his acts, omissions, and failures pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2013).

48.     During the Relevant Time, Vasquez directly or indirectly controlled VGI, and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting VGI's violations described in this Count Two.  Pursuant to Section 13(b) of the Act, 7 U.S.C. §13c(b) (2012), Vasquez is therefore liable for VGI's violations described in this Count Two to the same extent as VGI.

49.     Each false statement or report, including without limitation those specifically alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(1)(B) of the Act, 7 U.S.C. § 6b(a)(1)(B).

**Count III**

**Violations of Section 6(c)(1) of the Act and Regulation 180.1(a):**
**Fraud by Manipulative or Deceptive Devices or Contrivances**

50.     Paragraphs 1 through 35 are realleged and incorporated herein by reference.

51.     Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), provides, in relevant part, that it shall be unlawful for any person, "directly or indirectly, to use or employ or attempt to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate . . . ."

52.     Regulation 180.1(a) provides, in relevant part:

> It shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly:
>
> (1)     Use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud;
>
> (2)     Make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading;
>
> (3)     Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person . . . .

53.     Since August 15, 2011[1] and continuing through the present, Defendants have used or employed manipulative or deceptive devices or contrivances in connection with the Vasquez

---

[1] The amendment to Section 6(c)(1) and Regulation 180.1 both became effective on August 15, 2011, and therefore Count III only applies to conduct on or after that date. *See* 76 F.R. 41,398, July 14, 2011 (¶31,990).

13

pool including, but not limited to, making untrue or misleading statements of material facts to pool participants and/or prospective participants such as the following:

> (a) written statements touting the profitability of the Vasquez pool and the balance and performance of the pool trading account, including the July Fake FCM Statement and October Fake FCM Statement; and
>
> (b) various oral representations touting the profitability of the Vasquez pool.

54.    By this conduct, Defendants have violated Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2013).

55.    Vasquez's acts, omissions and failures, as described in this Count Three, were committed within the scope of his employment or office with VGI. Therefore, VGI is liable for his acts, omissions, and failures pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2013).

56.    During the Relevant Time, Vasquez directly or indirectly controlled VGI, and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting VGI's violations described in this Count Three. Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012), Vasquez is therefore liable for VGI's violations described in this Count Three to the same extent as VGI.

57.    Each manipulative or deceptive device or contrivance used or employed on or after August 15, 2011, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and Regulation 180.1(a), 17 C.F.R. §180.1(a) (2013).

**Count IV**

**Violations of Section 4o(1)(A), (B) of the Act:**
**Fraud by a CPO**

58.     Paragraphs 1 through 35 are realleged and incorporated herein by reference.

59.     Section 4o(1)(A), (B) of the Act, 7 U.S.C. § 6o(1)(A), (B) (2012), in relevant part, makes it unlawful for any commodity trading advisor, commodity pool operator, or associated person directly or indirectly "to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant" or "to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant."

60.     Between August 9, 2011 and August 28, 2012 Vasquez, acted as a CPO by engaging in a business that is the nature of an investment trust, syndicate or similar form of enterprise and by soliciting, accepting and receiving from others funds, securities and/or property for the purpose of trading commodities.

61.     Beginning at least on August 28, 2012, when it first accepted funds from a Vasquez pool participant, VGI acted as a CPO by engaging in a business that is the nature of an investment trust, syndicate or similar form of enterprise and by soliciting, accepting and receiving from others funds, securities and/or property for the purpose of trading commodities. Vasquez acted as an AP of VGI by soliciting and accepting customers' orders to trade commodity futures and supervising VGI's employees' solicitation and acceptance of customer orders.

62.     As set forth above, Vasquez, while acting as a CPO and an AP of a CPO, and VGI, while acting as a CPO, defrauded and deceived pool participants in violation of Section 4o(1) (A), (B) of the Act, 7 U.S.C. § 6o(1) (A), (B) (2012), by, among other things:

(a) misappropriating pool participant funds;

(b) issuing false written statements touting the profitability of the Vasquez pool and the balance and performance of the pool trading account, including the July Fake FCM Statement and October Fake FCM Statement; and; and

(c) making various oral misrepresentations regarding the profitability of the Vasquez pool and the location of pool participant funds.

63.     Vasquez's acts, omissions and failures, as described in this Count Four, were committed within the scope of his employment or office with VGI.  Therefore, VGI is liable for his acts, omissions, and failures pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2013).

64.     During the Relevant Time, Vasquez directly or indirectly controlled VGI, and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting VGI's violations described in this Count Four.  Pursuant to Section 13(b) of the Act, 7 U.S.C. §13c(b) (2012), Vasquez is therefore liable for VGI's violations described in this Count Four to the same extent as VGI.

65.     Each fraudulent or deceptive act, including without limitation those specifically alleged herein, is alleged as a separate and distinct violation of Section 4o(1)(A), (B) of the Act, 7 U.S.C. § 6o(1)(A), (B) (2012).

**Count V**

**Violations of Section 4k(2) of the Act:**
**Failure to Register as an AP of a CPO**

66.     Paragraphs 1 through 35 are realleged and incorporated herein by reference.

67.     With certain exemptions and exclusions not applicable here, it is unlawful for a person to be associated with a CPO as a partner, officer, employee, consultant, or agent, or a person occupying a similar status or performing similar functions, in any capacity that involves the solicitation of funds, securities, or property for participation in a commodity pool unless registered with the Commission as an AP of the CPO pursuant to Section 4k(2) of the Act, 7 U.S.C. § 6k(2) (2006).

68.     Section 4k(2) of the Act, 7 U.S.C. § 6k(2) (2006), also makes it unlawful for a CPO to permit such a person to become or remain associated with the CPO in any such capacity if the CPO knew or should have known that the person was not registered as an AP.

69.     Vasquez violated Section 4k(2) of the Act, 7 U.S.C. § 6k(2)(2006), in that he acted as an AP of VGI without the benefit of registration as an AP of a CPO.

70.     VGI violated Section 4k(2) of the Act, 7 U.S.C. § 6k(2) (2006), in that, acting as a CPO, it allowed Vasquez to act as its AP when it knew or should have known that Vasquez was not registered as an AP.

71.     Each act by Vasquez of soliciting funds, securities, or property for participation in a commodity pool while being associated with VGI as a partner, officer, employee, consultant, or agent without being registered as an AP of a CPO, and each act by VGI of allowing Vasquez to be associated with it in such a capacity when it knew or should have known Vasquez was not registered as an AP, is alleged as a separate and distinct violation of Section 4k(2) of the Act, 7 U.S.C. § 6k(2)(2006).

**Count VI**

**Violations of Section 4m(1) of the Act:**
**Failure to Register as a CPO**

72.     Paragraphs 1 through 35 are realleged and incorporated herein by reference.

73.     With certain exemptions and exclusions not applicable here, all CPOs operating a commodity pool are required to be registered with the Commission pursuant to Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012).

74.     From at least August 9, 2011 to August 28, 2012, Vasquez has engaged in activities as a CPO without the benefit of registration as a CPO, and in connection therewith used the mails or other means or instrumentalities of interstate commerce, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1).

75.     Beginning at least on August 28, 2012, when it first accepted funds from a Vasquez pool participant, VGI has engaged in activities as a CPO without the benefit of registration as a CPO, and Vasquez has engaged in activities as an AP of VGI without the benefit of registration as an AP of VGI and in connection therewith used the mails or other means or instrumentalities of interstate commerce, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1).

76.     Each use of the mails or any means or instrumentality of interstate commerce in connection with Vasquez and VGI's business as a CPOs and Vasquez's business as an AP of a CPO without proper registration during the Relevant Time period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1).

18

**Count VII**

**Violations of Regulation 4.20: Commingling of Pool Funds**

77.     Paragraphs 1 through 35 are realleged and incorporated herein by reference.

78.     Regulation 4.20(a), 17 C.F.R. § 4.20(a) (2013), requires that a "commodity pool operator must operate its pool as an entity cognizable as a legal entity separate from that of the pool operator."

79.     Regulation 4.20(b), 17 C.F.R. § 4.20(b) (2013), requires in part that all funds, securities or other property received by a CPO from an existing or prospective pool participant for the purchase or an interest in a pool that it operates or that it intends to operate must be received in the pool's name.

80.     Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2013), prohibits any CPO from commingling the property of any pool that it operates or that it intends to operate with the property of any other person.

81.     As set forth above, Vasquez accepted pool participant funds in his own name and failed to operate the Vasquez pool as a separate legal entity.  Prior to August 28, 2012, Vasquez had most, if not all, pool participants make their funds payable to Vasquez, and Vasquez deposited most, if not all, of those funds into his personal bank accounts, where they were commingled with funds belonging to Vasquez and/or his wife.

82.     Further, as set forth above, after August 28, 2012, Vasquez accepted pool participant funds in the name of VGI, and Vasquez deposited most, if not all, of those funds into VGI's bank account, where they were commingled with funds belonging to VGI and Vasquez.

83.     By this conduct, Defendants violated Regulation 4.20, 17 C.F.R. § 4.20 (2013).

84.     Each occasion that Vasquez and VGI accepted funds, securities or other property in Vasquez's name and deposited those funds into Vasquez's personal bank account where they were commingled with funds belonging to Vasquez and/or his wife, traded pool participant funds in Vasquez's own name, or failed to operate the Vasquez pool as a separate legal entity is alleged as a separate and distinct violation of Regulation 4.20, 17 C.F.R. § 4.20 (2013).

## VII.    RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers, enter:

**A.**     An order finding that Defendants violated Sections 4b(a)(1)(A)-(C), 4k(2), 4m(1), 4o(1), and 6(c)(1) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6k(2), 6m(1), 6o(1) and 9(1) (2012), and Commission Regulations 4.20(a)-(c) and 180.1(a)(1)-(3), 17 C.F.R. §§ 4.20(a)-(c), 180.1(a)(1)-(3) (2013);

B.     An order of permanent injunction prohibiting Defendants, and any other person or entity associated with them, from engaging in conduct in violation of Sections 4b(a)(1)(A)-(C), 4k(2), 4m(1), 4o(1), and 6(c)(1) of the Act and Regulations 4.20(a)-(c) and 180.1(a)(1)-(3);

C.     An order of permanent injunction permanently restraining, enjoining and prohibiting Defendants from, directly or indirectly:

(1)     Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, 7 U.S.C. § 1a);

(2)     Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3(hh)), 17 C.F.R. § 1.3(hh) (2013)) ("commodity options"), security

20

futures products, swaps (as that term is defined in Section 1a(47) of the Act and as further defined by Commission Regulation 1.3(xxx), 17 C.F.R. § 1.3(xxx) (2013)), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts"), for their own personal accounts or for any accounts in which they have a direct or indirect interest;

(3)     Having any commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts traded on their behalf;

(4)     Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts;

(5)     Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts;

(6)     Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2013); and

(7)     Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2013)), agent, or any other officer or employee of any person

21

registered, exempted from registration or required to be registered with the

Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R.

§ 4.14(a)(9) (2013).

D.      Enter an order requiring that Defendants, as well as any of their successors,

disgorge to any officer appointed or directed by the Court all benefits received including,

but not limited to, salaries, commissions, loans, fees, revenues and trading profits

derived, directly or indirectly, from acts or practices that constitute violations of the Act

and the Regulations, including pre and post-judgment interest;

E.      Enter an order requiring Defendants, as well as any of their successors, to make

full restitution, pursuant to such procedure as the Court may order, to every person or

entity whose funds were received or utilized by them in violation of the provisions of the

Act and/or Commission Regulations, as described herein, plus pre-judgment interest

thereon from the date of such violations, plus post-judgment interest;

F.      Enter an order directing Defendants and any of their successors, to rescind,

pursuant to such procedures as the Court may order, all contracts and agreements,

whether implied or express, entered into between it and any of the customers whose

funds were received by them as a result of the acts and practices, which constituted

violations of the Act and the Regulations as described herein;

G.      Enter an order requiring Defendants to pay civil monetary penalties under the Act,

to be assessed by the Court, in amounts of not more than the greater of: (1) triple their

monetary gain for each violation of the Act and the Regulations, or (2) $140,000 for each

violation;

H.     Enter an order requiring Defendants to pay costs and fees as permitted by

28 U.S.C. §§ 1920 and 2412(a)(2) (2012); and

I.     Enter an order providing such other and further relief as this Court may deem

necessary and appropriate under the circumstances.


Date: July 30, 2014                                Respectfully submitted,

                                                   U.S. COMMODITY FUTURES TRADING
                                                   COMMISSION

                                                   /s/ Elizabeth N. Pendleton
                                                   Senior Trial Attorney
                                                   U.S. Commodity Futures Trading
                                                   Commission
                                                   525 West Monroe Street, Suite 1100
                                                   Chicago, Illinois 60661
                                                   (312) 596-0629
                                                   *ependleton@cftc.gov*

                                                   Susan Gradman
                                                   Chief Trial Attorney
                                                   U.S. Commodity Futures Trading
                                                   Commission
                                                   525 West Monroe Street, Suite 1100
                                                   Chicago, Illinois 60661
                                                   (312) 596-0523
                                                   *sgradman@cftc.gov*

                                                   Rosemary Hollinger
                                                   Deputy Director
                                                   U.S. Commodity Futures Trading
                                                   Commission
                                                   525 West Monroe Street, Suite 1100
                                                   Chicago, Illinois 60661
                                                   (312) 596-0520
                                                   *rhollinger@cftc.gov*

23