# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CIVIL CASE NO. 1:14-cv-00196-MR-DLH

| | |
|---|---|
| U. S. COMMODITY FUTURES TRADING COMMISSION,<br><br>    Plaintiff,<br><br>vs.<br><br>EDWIN A. VASQUEZ and VASQUEZ GLOBAL INVESTMENTS, LLC<br><br>    Defendants. | <u>DEFAULT JUDGMENT</u> |

**THIS MATTER** is before the Court on the Motion for Default Judgment Ordering a Permanent Injunction and Other Equitable Relief ("Motion for Default Judgment") filed by Plaintiff U.S. Commodity Futures Trading Commission ("CFTC" or "Commission") against Defendants Edwin A. Vasquez ("Vasquez") and his company, Vasquez Global Investments, LLC ("VGI").

Having considered the Commission's well-pled Complaint, the Memorandum in Support of the Motion for Default Judgment, and declarations and attachments referenced therein, the Commission's Motion for Default Judgment is granted.

The Court finds that there is good cause for the entry of this Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, Permanent Injunctive Relief, Restitution, Civil Monetary Penalties and Other Ancillary Relief pursuant to Section 6c of the Commodity Exchange Act ("Act"), 7 U.S.C. § 13a-1 (2012), as set forth herein.

## I. RELEVANT PROCEDURAL HISTORY

1. On July 30, 2014, the Commission filed a Complaint for Injunctive and Other Equitable Relief and Penalties under the Commodity Exchange Act as Amended ("Complaint" or "Compl.") against Defendants Vasquez and VGI for violating core anti-fraud provisions of the Commodity Exchange Act, 7 U.S.C. §§ 1 *et seq.* (2012), and the Commission Regulations promulgated thereunder (the "Regulations"), 17 C.F.R. §§ 1.1 *et seq.* (2014), by fraudulently soliciting at least $583,491 from participants in an unregistered commodity pool Defendants operated, by misappropriating at least $331,556 of those funds, and by issuing false or misleading account statements to pool participants to conceal their fraud. (Doc. No. 1).

2. The Commission properly served Defendant VGI with the Complaint and summons through its registered agent, and properly served

Defendant Vasquez with the Complaint and summons through publication pursuant to Fed. R. Civ. P. 4(e)(1) and North Carolina Rule of Civil Procedure 4(j1), N.C. Gen. Stat. §1A-1.

3.     Neither VGI nor Vasquez filed an answer or otherwise responded to the Complaint.  Accordingly, on November 3, 2014, an Order of Default Pursuant to Federal Rule of Civil Procedure 55(a) was entered against Defendants.  (Doc. No. 27).  Accordingly, this Court finds that the well-pleaded allegations of the Complaint concerning the Defendant's liability are admitted and shall be taken as true.  Fed. R. Civ. P. 8(b)(6) (allegations other than those relating to damages are admitted if a responsive pleading is required and the allegations are not denied). Moreover, Federal Rule of Civil Procedure 55(b) authorizes this Court to enter a default judgment against a properly-served defendant who fails to filed a timely responsive pleading, and this Court finds that the well-pleaded allegations of the Complaint support the relief sought.

## II.     FINDINGS OF FACT

### A.     The Parties

4.     Plaintiff U.S. Commodity Futures Trading Commission is an independent federal regulatory agency charged by Congress with

administering and enforcing the Act, 7 U.S.C. §§ 1 *et seq.*, and Commission Regulations, 17 C.F.R. §§ 1.1 *et seq.*

5.      Defendant Edwin A. Vasquez resides in Arden, North Carolina. Vasquez identifies himself, on LinkedIn, as an "independent futures and commodities trader through CME, NYSE, [and] ICE."  In fact, Vasquez has never been registered with the Commission in any capacity.

6.      Defendant Vasquez Global Investments, LLC is a North Carolina limited liability company that Vasquez formed on or around November 22, 2011.  VGI has maintained offices in Arden, North Carolina and Fletcher, North Carolina.  Vasquez is and was at all times the sole owner and president of VGI.   VGI has never been registered with the Commission in any capacity.

**B.      The VGI Pool and Solicitation of Pool Participants**

7.      From at least August 9, 2011 to the present, Defendants have solicited and accepted at least $583,491 from at least 19 Vasquez pool participants.

8.      Vasquez, acting individually and after August 2012 on behalf of VGI, solicited individuals to participate in the Vasquez pool through emails and face-to-face meetings.  During those solicitations, Vasquez willfully or recklessly misrepresented to pool participants and prospective participants

that all of their funds would be used to trade commodity futures, including oil, gold and S&P futures. Vasquez also willfully or recklessly misrepresented the profitability of the Vasquez pool, including that the Vasquez pool was a no-risk investment with guaranteed returns, typically of 10% per month. Some of the individuals Vasquez solicited trusted him because they or their family members had a personal relationship with Vasquez or his wife, while others trusted him because they met him at business networking events.

9.     Vasquez typically provided pool participants and perspective participants with a document titled "Vasquez Investment Prospectus" for a private investment pool (the "Prospectus"). In the Prospectus, Vasquez willfully or recklessly misrepresented that the Vasquez pool was a "no-risk investment opportunity" that created "tangible cash flow" by "outperforming any product available" while "protecting and preserving capital."

10.    Vasquez also provided certain pool participants and perspective participants with a "How It All Works" analysis in which Vasquez willfully or recklessly misrepresented that pool participants' "[f]unds will be redirected into numerous investment vehicles currently operated in the United States and offshore" and that by "pooling resources"

pool participants were able to "diversify [their] investment and eliminate risk."

11.     Vasquez had most, if not all, pool participants execute an Investment Contract Agreement (the "Participant Agreement").     The Participant Agreement states in part that Vasquez will "use investment contribution [*i.e.*, pool participant's funds] as he deems necessary in multiple investment vehicles" and that pool participants "shall receive a fixed monthly payment of . . . (10%) per month."     The Participant Agreement also states that pool participant's "entire initial investment" will be returned in one year, or earlier if the participant "requests his/her investment contribution in advance of contract due date."

12.     In connection with the Vasquez pool enterprise, Vasquez opened at least five bank accounts in his own name, or in the name of Vasquez and his wife, and at least one account in the name of VGI with Wells Fargo Bank, N.A., f/k/a as Wachovia Bank ("Wells Fargo"). Specifically, in or around August 2011, Vasquez opened account numbers xxxxxxx4692 ("4692 Bank Account"), xxxxxxx4938 ("4938 Bank Account"), and xxxxxxx7787 ("4938 Bank Account"); sometime prior to January 1, 2011, Vasquez opened account number xxxxxxxxx2538 ("2538 Bank Account") in his own name or in the name of Vasquez and his wife; and in

or around December 9, 2011, Vasquez opened account number xxxxxx4147 ("4147 Bank Account") in the name of VGI (collectively "the Vasquez Bank Accounts").

13.    Vasquez was an authorized signatory for the Vasquez Bank Accounts and maintained control over the Vasquez Bank Accounts during the Relevant Time.  At Vasquez's direction, at least six Vasquez pool participants made their funds payable to Vasquez or gave cash directly to Vasquez.  Vasquez deposited at least $583,491 of pool participants' funds into the Vasquez Bank Accounts, where Vasquez commingled them with his, his wife's and VGI's funds, and from which he misappropriated at least $331,566.

## C.    The VGI's Commodity Futures Trading Accounts and Trading Losses

14.    Vasquez opened, managed, and controlled a commodity futures trading account at Dorman Trading, LLC ("Dorman"), a futures commission merchant ("FCM") registered with the Commission.[1] Specifically, in January 2009, Vasquez opened a futures trading account in his own name, account number xxxxxx3539 (the "3539 Account").  In the

---

[1] A FCM is defined in Section 1a(28) of the Act, 7 U.S.C. § 1a(28) (2012) in part as a firm that is engaged in soliciting or accepting orders for the purchase or sale of any commodity for future delivery and "accepts any money, securities or property (or extends credit in lieu thereof) to margin, guarantee, or secure any trades or contracts that result or may result therefrom."

account opening documents, dated January 7, 2009, Vasquez falsely represented that he was neither trading nor planned on trading any funds besides his own. Vasquez also provided a signed letter, dated January 7, 2009, in which he confirmed that he "did not solicit any customer funds" and was using his "own funds to trade the account." Vasquez last actively traded the 3539 Account in July 2012.

15. Between August 9, 2011, when Vasquez began accepting customer funds, and July 26, 2012, the date Vasquez liquidated the 3539 Account, Vasquez deposited $114,500 of pool participant funds into the 3539 Account, lost $65,374 trading the 3539 Account, including commissions and fees, and withdrew $49,126 from the 3539 Account, which he deposited into the Vasquez Bank Accounts and misappropriated. Although he represented to pool participants that he was earning consistent monthly profits trading commodity futures, Vasquez lost money in 11 of the 12 months that he actively traded customer funds in the 3539 Account. Throughout the life of the account, Vasquez had constant access to information regarding the 3539 Account, including all open positions and account balances. Vasquez received or had access to actual monthly statements from Dorman that showed, among other things, the profits or losses resulting from trading, and the month-end trade balances for the

account.  In addition to the 3539 Account, Vasquez opened but never funded two futures trading accounts in the name of VGI.  Vasquez has neither funded nor entered into any trades through any commodity futures trading account since July 26, 2012.

**D.    The Misappropriation of Pool Participant Funds and Issuance of False Statements**

16.    Between August 9, 2011 and November 18, 2013, Defendants misappropriated at least $331,556 in pool participants' funds by depositing them in the Vasquez Bank Accounts that Vasquez controlled, and then using those funds to pay VGI's operating costs and for Vasquez's personal expenses, including at least $14,464 on dining and food, $13,349 on travel, $33,578 on retail purchases, $53,741 on VGI payroll, $15,500 on rent and $52,000 in cash withdrawals.

17.    Despite the actual trading losses and misappropriation of funds described above, Vasquez either willfully or recklessly misrepresented to pool participants and prospective participants that all of the Vasquez pool funds had been invested in commodity futures trading accounts, and that the Vasquez pool was returning profits of 10% per month.

18.    Further, Vasquez either willfully or recklessly issued false written statements to at least two pool participants regarding the profitability and value of their respective shares of the Vasquez pool.  Vasquez made

these false statements through emails or other written statements that he and/or VGI issued.

19.    Vasquez also utilized an online trading software platform known as the "NinjaTrader" system that he gained access to after opening the 3539 Account to falsely represent the value and performance of the Vasquez pool trading account.    The NinjaTrader system includes a simulated account function known as the "NinjaTrader Simulator Account," which is designed to allow customers to practice trading on the NinjaTrader platform, and therefore does not reflect actual trades or funds.

20.    During an in-person meeting with at least one pool participant on or around August 9, 2011, Vasquez falsely represented that the NinjaTrader Simulator Account was an actual trading account through which Vasquez was able to make 20% to 30% returns trading commodity futures.    Vasquez informed the participant that he used NinjaTrader to trade funds belonging to him and to Vasquez pool participants, that the account had a balance of over $3 million, and that he would take losses ahead of investors.    In fact, the 3539 Account had a balance of $460 on August 9, 2011, and had no open positions as of that date.

21.    In July 2012, Vasquez sent another pool participant, via email, a weekly statement dated July 20, 2012 and purportedly issued by Dorman

(the "July Fake FCM Statement"). The July Fake FCM Statement was addressed to "Edwin A Vasquez (PIP)" and reflected a credit into the account of $64,256 as of July 20, 2012 for "P&L" and "cash amounts" of $58,388, as well as "total equity" and "account value at market" of $3,271,203. In fact, the 3539 Account had a balance of $649 on July 20, 2012.

22.    In or around October 2012, Vasquez sent a pool participant, via email, a weekly statement dated October 3, 2012 purportedly issued by Dorman for the 3539 Account (the "October Fake FCM Statement"). The October Fake FCM Statement was also addressed to "Edwin A Vasquez (PIP)" and reflected "net exposure" of $3,094,725 and "excess equity" of $391,600. Id. In fact, as of October 3, 2012, the 3539 Account had been closed with a zero balance.

## III.    CONCLUSIONS OF LAW

### A.    Jurisdiction and Venue

23.    This Court has jurisdiction over the parties and subject matter of this action pursuant to the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 1 *et seq.* (2012).

24.    Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e).

**B.     Default Judgment is Appropriate**

25.     According to Federal Rule of Civil Procedure 55(b)(2), a party may request the entry of default judgment following the entry of default. "Entry of default judgment is left to the sound discretion of the trial court" when "a defendant fails 'to plead or otherwise defend' in accordance with the Rules." CFTC v. PMC Strategy, LLC, 903 F. Supp. 2d 368, 375 (W.D.N.C. 2012) (citations omitted); Fed. R. Civ. P. 55(b)(2). Although "the Fourth Circuit has a strong policy that cases should ordinarily be decided on the merits, see U.S. v. Shaffer Equip. Co., 11 F.3d 450, 462 (4th Cir. 1993), default judgment is appropriate when the adversary process has been halted because of an unresponsive party." CFTC v. Smith, No. 1:10CV00009, 2012 WL 1642200, at *6 (W.D. Va. Apr. 16, 2012) (citing SEC v. Lawbaugh, 359 F.Supp.2d 418, 421 (D.Md. 2005) (citations omitted)).

26.     The Court is not required to hold an evidentiary hearing regarding damages, see Lawbaugh, 359 F. Supp. 2d at 422, but instead "may rely on affidavits or documentary evidence in the record to determine the appropriate sum." PMC Strategy, LLC, 903 F. Supp. 2d at 375. The Court may also grant injunctive relief by default judgment. See PMC

Strategy, LLC (awarding injunctive relief, restitution, and a civil penalty on default judgment without holding an evidentiary hearing).

27.     The Court may enter default judgment against both Mr. Vasquez and Vasquez Global Investments, LLC in this case.  Mr. Vasquez "is and was at all times the sole owner and president of VGI."  [Doc. 6 at 6]. Both Defendants in this case were properly served with the summons and complaint.  See CFTC v. Lake Shore Asset Management Ltd., No. 07C3598, 2008 WL 4299771 (N.D. Ill. Sept. 17, 2008) (entering default judgment against a party who had been served by publication).

### C.     Defendants Violated Section 4b(a)(1)(A),(C) of the Act

28.     Section 4b(a)(1)(A) and (C) make it unlawful for any person, in or in connection with any order to make, or the making of, any on-exchange futures contract, for or on behalf of any other person: (A) to cheat or defraud or attempt to cheat or defraud the other person; or (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act or agency performed with respect to such order or contract.

29.     Between at least August 9, 2011 and November 18, 2013, Vasquez, individually and on behalf of VGI, has cheated, defrauded, or

attempted to cheat or defraud, Vasquez pool participants by, among other things, misappropriating pool participant funds and using them to pay for personal expenses and for VGI's operating expenses.

30.    From at least August 9, 2011 to the present, Vasquez, individually and on behalf of VGI, has cheated, defrauded, or attempted to cheat or defraud, Vasquez pool participants by, among other things, willfully or recklessly misrepresenting and omitting material information concerning his trading performance including that: (1) pool participants would earn a guaranteed monthly return on their investment, typically 10%; (2) the Vasquez pool was a "no risk" investment; (3) all pool participant funds would be used to trade commodity futures; and (4) trading in the Vasquez pool was profitable.

31.    By this conduct, Defendants violated Section 4b(a)(1)(A),(C) of the Act, 7 U.S.C. §6(b)(a)(1)(A),(C).  Further, Vasquez engaged in the acts and practices described above knowingly or with reckless disregard for the truth.

### D.    Defendants Violated Section 4b(a)(1)(B) of the Act

32.    Section 4b(a)(1) of the Act also makes it unlawful for any person, in or in connection with any order to make, or the making of, any on-exchange futures contract, for or on behalf of any other person to: (B)

willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record.

33.    Since at least August 9, 2011, Defendants issued false written statements to Vasquez pool participants touting the profitability and value of participants' shares of the Vasquez pool.  Vasquez also issued false written statements to participants regarding the balance and results of the pool trading accounts, including the July Fake FCM Statement and the October Fake FCM Statement.  Defendants also utilized an online trading software platform to falsely represent the value and performance of the Vasquez pool trading account.

34.    By this conduct, Defendants violated Section 4b(a)(1)(B) of the Act, 7 U.S.C. §6(b)(a)(1)(B). Further, Vasquez, individually and on behalf of VGI, engaged in the acts and practices described above knowingly or with reckless disregard for the truth.

### E.    Defendants Violated Section 6(c)(1) of the Act

35.    Section 6(c)(1) of the Act makes it unlawful for any person, in connection with any contract of sale of any commodity for future delivery, to use or employ any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission shall

promulgate. Regulation 180.1(a) in relevant part makes it unlawful to: (1) use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; (2) make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; or (3) engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person.

36. Vasquez, acting individually and on behalf of VGI, also utilized manipulative or deceptive contrivances – most notably the Fake July Fake FCM Statement and Fake October Fake FCM Statement – to make untrue or misleading statements and omissions of material facts.

37. By this conduct, Defendants violated Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2014). Further, Vasquez, individually and on behalf of VGI, engaged in the acts and practices described above knowingly or with reckless disregard for the truth.

## F. Defendants Violated Section 4o(1)(A), (B)

38. Section 4o of the Act, in relevant part, makes it unlawful for a commodity pool operator ("CPO") or an associated person ("AP") of a CPO,

by using the mails or any means or instrumentality of interstate commerce, directly or indirectly, (A) to employ any device, scheme or artifice to defraud any participant or prospective participant, or (B) to engage in any transaction, practice or course of business that operates as a fraud or deceit upon any participant or prospective participant.

39.    Between August 9, 2011 and August 28, 2012 Vasquez acted as a CPO by engaging in a business that is the nature of an investment trust, syndicate or similar form of enterprise and by soliciting, accepting and receiving from others funds, securities and/or property for the purpose of trading commodities.

40.    Beginning at least on August 28, 2012, when it first accepted funds from a Vasquez pool participant, VGI acted as a CPO by engaging in a business that is the nature of an investment trust, syndicate or similar form of enterprise and by soliciting, accepting and receiving from others funds, securities and/or property for the purpose of trading commodities. Vasquez acted as an AP of VGI by soliciting and accepting customers' orders to trade commodity futures and supervising VGI's employees' solicitation and acceptance of customer orders.

41.    As set forth above, Vasquez, while acting as a CPO and an AP of a CPO, and VGI, while acting as a CPO, defrauded and deceived pool

participants in violation of Section 4o(1) (A), (B) of the Act, 7 U.S.C. § 6o(1) (A), (B) (2012), by, among other things, misappropriating pool participant funds; issuing false written statements; and making various misrepresentations and omissions of material fact regarding the profitability of the Vasquez pool, the risk of trading, and the location of pool participant funds.

### G. Defendants Violated Section 4m(1)

42.    With certain exemptions and exclusions not applicable here, all CPOs operating a commodity pool are required to be registered with the Commission pursuant to Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012).

43.    From at least August 9, 2011 to August 28, 2012, Vasquez has engaged in activities as a CPO without the benefit of registration as a CPO, and in connection therewith used the mails or other means or instrumentalities of interstate commerce.  Beginning at least on August 28, 2012, when it first accepted funds from a Vasquez pool participant, VGI has engaged in activities as a CPO without the benefit of registration as a CPO, and Vasquez has engaged in activities as an AP of VGI without the benefit of registration as an AP of VGI and in connection therewith used the mails or other means or instrumentalities of interstate commerce.

44.   By this conduct, Defendants violated Section 4m(1) of the Act, 7 U.S.C. § 6m(1).

**H.   Defendants Violated Section 4k(2)**

45.   Section 4k(2) of the Act, 7 U.S.C. § 6k(2) (2012), also makes it unlawful for a CPO to permit such a person to become or remain associated with the CPO in any such capacity if the CPO knew or should have known that the person was not registered as an AP.

46.   Beginning in or around August 9, 2011, Vasquez acted as an AP of VGI without the benefit of registration as an AP of a CPO.  Beginning at least on August 28, 2012, VGI, acting as a CPO, allowed Vasquez to act as its AP when it knew or should have known that Vasquez was not registered as an AP.

47.   By this conduct, Defendants violated Section 4k(2) of the Act, 7 U.S.C. § 6k(2).

**I.   Defendants Violated Regulation 4.20**

48.   Commission Regulation 4.20(a), 17 C.F.R. § 4.20(a) (2014), requires that a "commodity pool operator must operate its pool as an entity cognizable as a legal entity separate from that of the pool operator"; Regulation 4.20(b), 17 C.F.R. § 4.20(b) (2014), requires in part that all funds, securities or other property received by a CPO from an existing or

prospective pool participant for the purchase or an interest in a pool that it operates or that it intends to operate must be received in the pool's name; and Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2014), prohibits any CPO from commingling the property of any pool that it operates or that it intends to operate with the property of any other person.

49.     Vasquez accepted pool participant funds in his own name and failed to operate the Vasquez pool as a separate legal entity.  Prior to August 28, 2012, Vasquez had most, if not all, pool participants make their funds payable to Vasquez, and Vasquez deposited most, if not all, of those funds into his personal bank accounts, where they were commingled with funds belonging to Vasquez and/or his wife.  Further, after August 28, 2012, Vasquez accepted pool participant funds in the name of VGI, and Vasquez deposited most, if not all, of those funds into VGI's bank account, where they were commingled with funds belonging to VGI and Vasquez.

50.     By this conduct, Defendants violated Regulation 4.20, 17 C.F.R. § 4.20 (2014).

### J.     Injunctive Relief is Appropriate

51.     Under Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), injunctive relief is appropriate where there is a reasonable likelihood of future violations.  Unless restrained and enjoined by this Court, Defendants

Vasquez and VGI are likely to continue to engage in the acts and practices alleged in the Complaint, or in similar acts and practices.

52.     Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1), permits this Court to assess a civil monetary penalty of not more than the higher of (a) $140,000 for each violation, or (b) triple the monetary gain to Defendants for each violation of the Act and Regulations. 17 C.F.R. § 143.8, (2014).

53.     The Defendants received a total of $331,556 in actual monetary gain as a result of their violations of the Act and Regulations.  The objectives of the Act are best served by ordering full restitution in the amount of $331,556 to all Vasquez pool participating whose funds were received or disposed of by the Defendants in violation of the Act.

54.     The Commission is further entitled to an award of a civil monetary penalty against the Defendants, in the amount of $994,668, representing the trebled amount of the actual damages, in accordance with 7 U.S.C. § 13a-1(d)(1).

55.     Judgment is, therefore, appropriate in the amount of $1,326,224 against the Defendants jointly and severally and in favor of the Plaintiff.  This amount is the sum of the $331,556 restitution award and the $994,668 statutory penalty as set forth above.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Defendants Edwin A. Vasquez and Vasquez Global Investments, LLC have violated Sections 4b(a)(1)(A)-(C), 4k(2), 4m(1), 4o(1), and 6(c)(1) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6k(2), 6m(1), 6o(1) and 9(1) (2012), and Commission Regulations 4.20(a)-(c) and 180.1(a)(1)-(3), 17 C.F.R. §§ 4.20(a)-(c), 180.1(a)(1)-(3) (2014). Therefore, judgment shall be and hereby is entered in favor of Plaintiff U.S. Commodity Futures Trading Commission and against Defendants as follows:

## IV. PERMANENT INJUNCTIVE RELIEF GRANTED

**IT IS HEREBY ORDERED THAT:**

56. Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, and this Court's equitable powers, Defendants are permanently restrained, enjoined and prohibited from directly or indirectly engaging in conduct in violation of Sections 4b(a)(1)(A)-(C), 4k(2), 4m(1), 4o(1), and 6(c)(1) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6k(2), 6m(1), 6o(1) and 9(1) (2012), and Commission Regulations 4.20(a)-(c) and 180.1(a)(1)-(3), 17 C.F.R. §§ 4.20(a)-(c), 180.1(a)(1)-(3) (2014).

**IT IS FURTHER ORDERED THAT:**

57.    Defendants Vasquez and VGI are permanently restrained, enjoined, and prohibited, from directly or indirectly:

(A) Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, 7 U.S.C. § 1a);

(B) Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3(hh)), 17 C.F.R. § 1.3(hh) (2014)) ("commodity options"), security futures products, swaps (as that term is defined in Section 1a(47) of the Act and as further defined by Commission Regulation 1.3(xxx), 17 C.F.R. § 1.3(xxx) (2014)), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts"), for their own personal accounts or for any accounts in which they have a direct or indirect interest;

(C) Having any commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts traded on their behalf;

(D) Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any

account involving commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts;

(E) Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts;

(F) Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014); and

(G) Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2014)), agent, or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014).

## V. RESTITUTION, CIVIL MONETARY PENALTIES AND OTHER ANCILLARY RELIEF

### A. Restitution Obligation

58.     The Plaintiff shall have and recover of the Defendants Vasquez and VGI, jointly and severally, a judgment in the amount of $1,326,224.  Of this amount, the first $331,556 recovered shall constitute the Defendants' restitution obligation (the "Restitution Obligation").  Post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

59.     To effect payment of the Restitution Obligation and the distribution of any restitution payments to Vasquez pool participants the Court appoints the National Futures Association ("NFA") as Monitor ("Monitor").  The Monitor shall collect restitution payments from Defendants and make distributions as set forth below.  The Monitor shall act as an officer of this Court in performing these services.

60.     The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Vasquez pool participants identified by the Commission/CFTC or may defer distribution until such time as the Monitor deems appropriate.  In the event that the amount of Restitution Obligation

payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to eligible pool participants is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission/CFTC following the instructions for civil monetary penalty payments set forth in this Judgment.

61.     Defendants shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify Vasquez pool participants to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments.  Defendants shall execute any documents necessary to release funds they have in any repository, bank, investment or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

62.     The Monitor shall provide the Commission at the beginning of each calendar year with a report detailing the disbursement of funds to Vasquez pool participants during the previous year.   The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity

Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

63.     The amounts payable to each Vasquez pool participant shall not limit the ability of any participant from proving that a greater amount is owed from Defendants or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any participant that exist under state or common law.

64.     To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defendants' Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

## B.     Civil Monetary Penalty

65.     The remainder of the judgment, $994,668, is awarded to the Plaintiff against the Defendants Vasquez and VGI, jointly and severally, as a civil monetary penalty ("CMP Obligation").  Post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2012).

**C.      Provisions Related to Monetary Sanctions**

66.    Partial Satisfaction: Any acceptance by the Commission of partial payment of Defendants' Restitution Obligation or CMP Obligation shall not be deemed a waiver of their obligation to make further payments pursuant to this Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

**VI.    MISCELLANEOUS PROVISIONS**

**IT IS FURTHER ORDERED THAT:**

67.    Notice:  All notices required to be given by any provision in this Order shall be sent certified mail, return receipt requested, as follows:

> Rosemary Hollinger
> Deputy Director, Division of Enforcement
> U.S. Commodity Futures Trading Commission
> 525 W. Monroe Street, Suite 1100
> Chicago, IL 60661

All such notices to the Commission shall reference the name and docket number of this action.

68.    Change of Address/Phone:  Until such time as Defendants satisfy in full their Restitution Obligation and CMP Obligation as set forth in this Order, Defendants shall provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten (10) calendar days of the change.

69.  Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action.

70.  Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Order shall be binding upon Defendants, upon any person under their authority or control, and upon any person who receives actual notice of this Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendants.

71.  Copies of this Order may be served by any means, including facsimile transmission, email, United Parcel Service and U.S. mail, upon Defendants and any other entity or person that may be subject to any provision of this Order.

**IT IS FURTHER ORDERED,** that there being no just cause for delay, the Clerk of the Court shall enter final judgment against Defendants Edwin A. Vasquez and Vasquez Global Investments, LLC forthwith.

**IT IS SO ORDERED.**

Signed: December 30, 2014

Martin Reidinger
United States District Judge